AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

**FILED**
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
RA 128 Bosson Wash Road, Vanderwagen, New Mexico ) Case No. MR 21-1712
87326 and a white trailer with V.I.N. )
58TTL3820H5030234 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A

located in the __County of McKinley__ District of __New Mexico__, there is now concealed *(identify the person or describe the property to be seized)*:

See attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 1951 | Interference with commerce by threats of violence |
| 18 USC 924(c) | Use of a firearm during a crime of violence |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days *(give exact ending date if more than 30 days:* ____*)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Justin Tennyson, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
__Telephonically sworn and electronically signed__ *(specify reliable electronic means)*.

Date: December 8, 2021

*Judge's signature*

City and state: Farmington, New Mexico

B. Paul Briones, US Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Justin Tennyson, being duly sworn, state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since July 2014. I am currently assigned to the Albuquerque Field Office, Gallup Resident Agency. My primary duties as a Special Agent with the FBI include investigating crimes occurring in Indian Country to include assaults and murders. I have also worked other violations to include violations of United States Code Title 18 §1951 – Interference with commerce by threats of violence and United States Code Title 18 §924(c) – Use of a firearm during a crime of violence. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state and federal law enforcement agencies. As a Federal Agent, I am authorized to investigate violations of the laws of the United States and have authority to execute arrest and search warrants issued under the authority of the United States.

2.  This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to law enforcement officers. Law enforcement officers are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

3.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises located at RA 128 Bosson Wash Road, Vanderwagen, New Mexico 87326, including a white trailer with V.I.N.

1

58TTL3820H5030234 (hereinafter referred to as the "TARGET PREMISES"). Your affiant has set forth only the facts that your affiant believes are necessary to establish probable cause for a search warrant that violations of United States Code Title 18 §1951 – Interference with commerce by threats of violence and United States Code Title 18 §924(c) – Use of a firearm during a crime of violence, were committed and evidence, fruits, instrumentalities of, or property intended for use in those violations will be found at the TARGET PREMISES.

## PROBABLE CAUSE

4. On December 04, 2021, at about 1:34 p.m., Gallup Police Department (GPD) officers were dispatched to C & R Insurance, located at 1365 US Highway 491, Gallup, New Mexico in reference to a robbery that had taken place. A female and two males had entered the business and demanded money. The female had also fired a round into the ceiling during the robbery.

5. E.R., y.o.b. 1974, hereafter Witness 1, was interviewed and stated she was inside the business getting a quote for insurance when she heard a pop. Witness 1 saw a male, female, and a "chubby" male walk in. The female had yelled to see everyone's hands and to get on the ground. They were all wearing dark clothing.

6. K.E., y.o.b. 1994, an employee of C & R Insurance, hereafter Witness 2, was interviewed and stated that two people dressed in all black walked into the business. She heard the pop and a female start to yell. A male had walked over to her and pointed a handgun at her. The male asked for money and Witness 2 pointed to the drawer on her right side. The male had a "chunky handgun" which was gray and black in color. The ridges to the handgun was olive green in color. Witness 2 heard one of the people yell, "If the cops are called, we'll come back."

7. D. L., y.o.b. 1994, an employee of C & R Insurance, hereafter Witness 3, stated she was helping a customer when she heard a pop. Witness 3 saw two people enter the business and heard the female yell to put their hands up and to give them all their money. The female was described as about 5'4" tall and was thin. Witness 3 stated the female asked where the money was and Witness 3 pointed to the drawer. The female was close to her and Witness 3 saw a tattoo on the right side of her face by her eye.

8. A.G., y.o.b. 1994, an employee of C & R Insurance, hereafter Witness 4, stated she had seen the female and males come into the business. Witness 4 heard a pop and saw a male standing by the door wearing a snap back hat. The male told her to look down. The female with a red bandana had pointed a gun to her face. Witness 4 stated they all looked young, like around 27 years of age. The female was not very tall and weighed around 130 – 135 pounds.

9. Video footage of the robbery was obtained from the business. The affiant has observed the footage. Three individuals, two males and a female, unknown subjects (UNSUBs), came into the business. The first person, a male, hereafter UNSUB 1, came in wearing a gray in color beanie with a face mask that had white lettering on it. UNSUB 1 had a long sleeve shirt with a white emblem on the chest area. UNSUB 1 had black pants on with black Nike shoes that had white soles.

10. A female, hereafter UNSUB 2, walks past UNSUB 1 and fires a round into the ceiling. UNSUB 2 pulled the handgun from the front pocket of her black pullover sweatshirt. Her sweatshirt has the initials "fb" on the front of it that is in white lettering. UNSUB 2 held the handgun with both hands as she fired the round. UNSUB 2 is wearing black pants and appears to have a red shirt under her sweatshirt. UNSUB 2 has black and white Nike shoes. The shoes have a red Nike symbol on them. UNSUB 2 yelled, "Hands up, put your fuckin' hands up, give your

fucking money, give me your money!" UNSUB 2 goes to the southwest corner of the desk where Witness 3 was sitting and points a gun at her. At this point, a tattoo on the back of UNSUB 2's right hand is present that covers a large portion of her hand that stops near her knuckles. UNSUB 2 was the only one that appeared to give commands to the individuals in the business during the incident.

11. UNSUB 1 pulled a white, large bag out of his left front pant pocket. UNSUB 1 unfolded the bag and walked to the southeast corner desk where an employee was sitting. UNSUB 1 pulled the cash register out with the money inside of it. UNSUB 1 then walked to the northwest corner of the office and checked the drawers. UNSUB 1 then went to the northeast corner to an employee and pulled the top drawer out and pulled the money tray out. UNSUB 1 walked away from the desk and walked out the front door and ran south with the other two individuals.

12. The other male, hereafter UNSUB 3, was described as a heavy-set male about 245 – 300 lbs and 5'08" in height. UNSUB 3 also had black and white Nike shoes on. UNSUB 3 had a black shirt on and what appears to be a black coat. UNSUB 3 had a red mask and white pants on. UNSUB 3 appears to also have a small firearm that he pulled out from his right coat pocket. UNSUB 3 folded his arms, possibly as an attempt to conceal the firearm. UNSUB 3 stepped into the business once the other two individuals had gained entry. UNSUB 3 appeared to be watching out for the other two individuals and stood at the front door during the robbery. As the other two individuals were walking out of the business, UNSUB 3 told them to, "Get that one, get that one too", and points to where Witness 4's desk was. UNSUB 1 then went to the drawer and took out money.

4

13. UNSUB 2 appears to be Amber YAZZIE, year of birth 1994, hereafter YAZZIE. Law enforcement is aware that YAZZIE has a tattoo on her right hand that appears to be similar to the tattoo that UNSUB 2 has in the video footage. YAZZIE also has a tattoo on the right side of her face which was observed by Witness 3. The affiant has previously interviewed YAZZIE within the past (4) months for an unrelated case and believes the voice of UNSUB 2 to be that of YAZZIE. YAZZIE is thin and a database check of NCIC of her height revealed it to be 5'02", which is similar to the description provided by witnesses.

14. The affiant has also reviewed the Facebook account believed to be used by YAZZIE as it contains several photographs of YAZZIE and the username is spelled similarly to her official name. The account contains a photograph of what appears to be YAZZIE holding up her right hand that blocks the camera. YAZZIE's middle finger is pointed up towards the camera. In this photograph, a tattoo is observed on the right hand which appears to cover a majority of the hand and stops near the knuckles, which is similar to the tattoo that UNSUB 2 has from the business video footage. The account also contains a photograph of YAZZIE holding a black handgun and pointing it towards the camera that was posted in October 2021. In November 2021, the referenced account has a photograph of YAZZIE wearing what appears to be the same black sweatshirt with white lettering that was worn during the robbery on December 04, 2021. Another photograph in November 2021 contains a photograph of YAZZIE with a tattoo that runs down the right side of her face that appears to be lettering.

15. A silver bullet casing was recovered at the business by the GPD. The casing, a Speer, nickel plated .40 S&W casing, appeared identical to casings that had been recovered by the GPD on the day prior to the robbery at a homicide scene that had taken place in Gallup, New Mexico. YAZZIE has been charged by the GPD with that homicide.

16. The GPD got a flyer out to the public for assistance on the robbery later that day which described the individuals and the vehicle that was used by them. The vehicle was described as a new model silver four door passenger car with a sunroof. The car had a black car-bra on the front bumper and chrome rims.

17. M.J., y.o.b. 1964, hereafter Witness 5, called in to the GPD and stated that the female that was posted online was YAZZIE. M.J. stated that YAZZIE had that same tattoo on her hand. M.J. believed that UNSUB 3 was GREGORY YAZZIE, y.o.b. 1996, hereafter GREGORY, who is related to YAZZIE. M.J.'s daughter had also told M.J. that the female that was involved in the robbery was YAZZIE and that UNSUB 3 was GREGORY.

18. J.L., y.o.b. 1977, hereafter Witness 6, was interviewed by the GPD and stated that the female that was involved in the robbery was YAZZIE. Witness 6 had recently seen YAZZIE wearing the same sweatshirt that the female was wearing in the photograph. J.L. seen the tattoo on YAZZIE's right hand and knew for sure it was her. J.L. had also seen YAZZIE with a handgun that appeared similar to what was used during the robbery. Witness 6 stated that if YAZZIE found out that you had told on her to law enforcement, YAZZIE would "come and shoot you." Witness 6 knows YAZZIE uses heroin, methamphetamine, and sells dope.

19. On December 06, 2021, an individual contacted Metro Dispatch in Gallup, New Mexico and stated that YAZZIE was currently at her residence and was talking with an individual that was there. The calling party knew YAZZIE to be wanted for robbery and murder. YAZZIE was then going to be headed to Gallup, NM and the GPD located a vehicle that appeared to match the description given by the caller. The passenger car was bearing New Mexico license plate APDM38, hereafter the "Subject Vehicle", and was a Chevrolet Malibu. The Subject Vehicle turned southbound on State Highway 602 and was driving at a high rate of

speed. The Subject Vehicle had turned off the headlamps and continued southbound in the northbound lanes of State Highway 602. As the vehicle approached the 26-mile marker, a vehicle traveling northbound moved off the roadway as the Subject Vehicle continued to travel the wrong way. The Subject Vehicle continued southbound on State Highway 602 over a hundred miles per hour. As the Subject Vehicle approached Uprooted Tree Road on State Highway 602, items were observed being thrown out of the window.

20.     At approximately the 12-mile marker to the 11.5-mile marker on State Highway 602, the McKinley County Sheriff's Office (MCSO) deputy heard three gun shots that appeared to have come from the Subject Vehicle. The Subject Vehicle then approached the 11-mile marker and more gunshots were heard. Orange flashes from the passenger side of the vehicle were observed that were believed to be muzzle flashes. The officer slowed down to avoid being struck by the shots fired. The Subject Vehicle continued with no headlamps traveling southbound on State Highway 602 at a high rate of speed. The Subject Vehicle turned westbound on Bosson Wash Road, also known as Bossom Wash Road, at a high rate of speed. There were fresh tire tracks that led to RA 128 Bosson Wash Road, Vanderwagen, New Mexico, which is the TARGET PREMISES. The Subject Vehicle was parked behind the residence.

21.     A check of the New Mexico Department of Motor Vehicles revealed that the Subject Vehicle, a gray Chevrolet Malibu bearing New Mexico license plate APDM38 with V.I.N. 1G1ZB5ST3JF255190, is registered to R.J. and J.J. at RA 128B Bossom Wash Road, Vanderwagen, New Mexico 87326, which is the TARGET PREMISES.

22.     On December 07, 2021, a caller to the McKinley County Metropolitan Dispatch Authority (MCMDA) in Gallup, NM stated that a gun was pulled on her by R.J. and that he was with the people that robbed C & R. The location was at RA 128 or 128A Bosson Wash Road,

7

Vanderwagen, NM. R.J. was in a white RV at the location and was with YAZZIE and GREGORY. YAZZIE also had a gun on her. The calling party left on foot with other family members from the residence to hide out of fear that she would be killed. The caller stated they, referring to R.J., YAZZIE, and GREGORY, also hide out in the woods.

23. Law enforcement went out to the residence and was able to make contact with the calling party but did not make contact with any other individuals. The white trailer was observed to have a V.I.N. of 58TTL3820H5030234.

24. On December 07, 2021, T.P., y.o.b. 1968, the owner of C & R Insurance, was interviewed. T.P. stated that he had purchased the business from his father in 2010. T.P. has four business locations in New Mexico and is licensed to sell insurance to customers in New Mexico, Arizona, and Colorado. T.P. estimated that they have around 60,000 customers and a large percentage of them live in Arizona. C & R Insurance primarily sells insurance from Safeway Insurance located in Mesa, AZ, Dairyland Insurance located in Stevens Point, WI, and Gainsco Insurance in Dallas, TX.

25. When T.P. was contacted on December 04, 2021 that they had been robbed, he immediately closed his four business locations as he was unsure if they were being targeted. His employees were shook up after the incident and he has given them time off and has closed the location of the robbery for the next week of business. T.P. estimated that 85% of his customers pay in cash and that the people responsible for the robbery appeared to know exactly where to go to get the cash. The robbers had stole over $4000.00 from the cash registers. T.P. checked the records of his customers and it was discovered that YAZZIE's mother has been a customer.

26. The affiant believes the aforementioned details establishes that interstate commerce was affected during the robbery that occurred on December 04, 2021.

27. On December 07, 2021, an arrest warrant was obtained by the GPD from the McKinley County Magistrate Court for YAZZIE on charges of Murder in the first degree, Armed robbery, four counts of Aggravated Assault (use of a deadly weapon), and Shooting at an inhabited dwelling or occupied building. On December 08, 2021, an arrest warrant was obtained in the United States District Court for the District of New Mexico by the FBI for YAZZIE on charges of United States Code Title 18 §1951 – Interference with commerce by threats of violence and United States Code Title 18 §924(c) – Use of a firearm during a crime of violence.

28. It is noted that a check of public records revealed that R.J. has used different addresses at the TARGET PREMISES to include RA's 128A, 128B, and 128C Bosson Wash Road, Vanderwagen, New Mexico 87326. In addition, the caller to the McKinley County dispatch center on December 07, 2021 stated that R.J. was also using a white trailer and reported the incident as occurring at RA 128 and RA 128A. In the affiants training and experience, the numbering of the RA residences that are on tribal land denotes a family compound and the lettering denotes different housing structures. The affiant notes that it is common for tribal members to utilize different housing structures as they all belong to the same family. Therefore, the affiant believes that R.J. lives at RA 128 Bosson Wash Road, Vanderwagen, New Mexico 87326 or in the white trailer with V.I.N. 58TTL3820H5030234. YAZZIE and GREGORY appear to be friends or are related to R.J. so it is also unclear which housing structures they have access to at RA 128 Bosson Wash Road, Vanderwagen, New Mexico 87326.

29. Based on my training and experience, offenders often keep weapons, to include firearms, which have been used in violent crimes at their residence or on their person. Additionally, based on your affiant's training and experience, I also know that those involved in committing a crime and then fleeing the scene may use cellular devices to aid in their escape, or communicate

9

information related to the crime they committed. This includes but is not limited to text message communications, telephone calls, and location information.

30. The Subject Vehicle that was observed at the TARGET PREMISES is believed to possibly be the same vehicle that was used by the subjects on December 04, 2021 after the robbery had occurred.

31. YAZZIE, GREGORY, and R.J., are believed to be at the TARGET PREMISES and they all have prior arrests related to controlled substances. A check of the McKinley County court records revealed that YAZZIE has several pending felony drug cases and that she has violated the conditions of her release. Witness 6 knows YAZZIE to use and sell controlled substances. Individuals involved in drug trafficking often keep controlled substances at their residence to include in locked containers and other areas. The affiant knows that a common motive that offenders have for robbing businesses is to obtain money in order purchase additional controlled substances.

## CONCLUSION

32. Based upon the information contained herein, your affiant believes that there is probable cause to search the TARGET PREMISES, described in Attachment A, for the items described in Attachment B, which are evidence, fruits, instrumentalities of, or property intended for use in violations of United States Code Title 18 §1951 – Interference with commerce by threats of violence and United States Code Title 18 §924(c) – Use of a firearm during a crime of violence.

33. Supervisory Assistant United States Attorney Kyle Nayback has reviewed and approved this affidavit in support of an application for a search warrant.

*Justin Tennyson*

Justin Tennyson

Special Agent

Federal Bureau of Investigation

Telephonically sworn and electronically signed before me this 8th day of December 2021

*B Paul Briones*

United States Magistrate Judge

## ATTACHMENT A

### Place to Be Searched

The place is located at RA 128 Bosson Wash Road, Vanderwagen, New Mexico 87326, to include a white trailer with V.I.N. 58TTL3820H5030234. The search of the TARGET PREMISES shall include the residences and all trash cans or containers located thereon.

## **ATTACHMENT B**

### **Items to be Seized**

As a result of this investigation, there is probable cause to believe that contained within the interior and/or exterior of the residence located at RA 128 Bosson Wash Road, Vanderwagen, New Mexico 87326, to include a white trailer with V.I.N. 58TTL3820H5030234, there is evidence related to violations of United States Code Title 18 §1951 – Interference with commerce by threats of violence and United States Code Title 18 §924(c) – Use of a firearm during a crime of violence. The search warrant authorized the collection of the following:

1. Any evidence of the business robbery to include firearms possessed by the robbers, ammunition, clothing worn by the robbers, shoes worn by the robbers, mask/face covering worn by the robbers;
2. United States currency;
3. Media storage devices, computers, cellular telephones, and their contents;
4. Items related to the possession and use of firearms, such as: gun boxes and cases, ammunition magazines, gun safes/vaults, ammunition boxes, firearms/instruction manuals, gun cleaning kits, reloading equipment and supplies, gun accessories, photographs of firearms, receipts for the purchase of firearms and related items to firearms, and literature from gun manufacturers/retailers/internet websites;
5. Documentation relating to the ownership and/or control of the 2018 Chevrolet Malibu with V.I.N. 1G1ZB5ST3JF255190;
6. Documentation relating to the ownership and/or control of the white trailer with V.I.N. 58TTL3820H5030234;
7. 2018 Chevrolet Malibu with V.I.N. 1G1ZB5ST3JF255190;

8. Articles of property tending to establish the identity of persons in control of the premises, storage areas, and containers being searched, including receipts, addressed envelopes, and keys;

9. Controlled substances, drug paraphernalia, scales, plastic baggies or other packaging materials;

10. Safes, combinations or key-lock strong boxes or other secure storage containers, suitcases, locked cabinets, locked or closed containers, and hidden compartments that may contain any of the foregoing;

11. Photographs and/or video of the residence and items/person seized